# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS, WORCESTER DIVISION

| | |
|---|---|
| D.M., I.M., B.M., | Case No.: |
| and | |
| ADAM MAY, | CIVIL COMPLAINT FOR DECLARATORY RELIEF, |
| and | INJUNCTIVE RELIEF AND DAMAGES. |
| HEATHER MAY, *Plaintiffs*, | |
| *vs.* | |
| CYNTHIA DUNGEY, in her official capacity as Director of Ohio Department of Job and Family Services, | |
| and | |
| DAVID DOMBROSKY, in his official capacity as Director of Delaware County, Ohio, Department of Job and Family Services, | |
| and | |
| ASHLEY KELLER, in her official capacity as Supervisor of Delaware County, Ohio, Department of Job and Family Services, | |
| and | |
| LYNN STACY, in her official capacity as Supervisor of Delaware County, Ohio, Department of Job and Family Services, *Defendants*. | |

# COMPLAINT FOR A CIVIL CASE

**PLAINTIFFS**

{1} Dependent children;
D.M., I.M., B.M.

{2} Adam May
187 Ramshorn Rd.
Dudley, MA. 01571
(614) 313- 2258
mayemc2@yahoo.com

{3} Heather May
187 Ramshorn Rd.
Dudley, MA. 01571
(774) 922- 0103
may.heather@yahoo.com

**DEFENDANTS**

{4} Cynthia Dungey, *in her official capacity as Director of Ohio Department of Job and Family Services,*
30 E. Broad St.
32nd Floor
Columbus, OH. 43215
(614) 466-1213
Email unknown

{5} David Dombrosky, *in his official capacity as Director of Delaware County, Ohio, Department of Job and Family Services,*
140 N. Sandusky St.
Delaware, OH. 43015
(740) 833- 2305
David.Dombrosky@jfs.ohio.gov

{6} Ashley Keller, *in her official capacity as Supervisor of Delaware County, Ohio, Department of Job and Family Services,*
140 N. Sandusky St.
2nd Floor
Delaware, OH. 43015
(740) 833- 2358
Ashley.Keller@jfs.ohio.gov

{7} Lynn Stacy, *in her official capacity as Supervisor of Delaware County, Ohio, Department of Job and Family Services,*
140 N. Sandusky St.
2nd Floor
Delaware, OH. 43015
(740) 833- 2359
Lynn.Stacy@jfs.ohio.gov

## JURISDICTION

{8} This case arises under the United States Constitution and federal laws, which provides a basis for federal court jurisdiction, pursuant 28 U.S.C. § 1331; 28 U.S.C. § 1343(a); 42 U.S.C. § 1985(3). Furthermore, this case presents basis for federal court jurisdiction, a citizen of one State suing a citizen of another State and the amount is more than $75,000, rendering it a diversity of citizenship, 28 U.S.C. § 1332.

## BASIS FOR JURISDICTION IS A FEDERAL QUESTION

{9} The specific federal statutes and provisions of the United States Constitution that are at issue in this case are: U.S. Constitution; Article VI, (Paragraph 2), Supremacy Clause; 14th Amendment, Equal Protection Clause; 14th Amendment, Procedural Due Process Clause; Adoption and Safe Families Act of 1997, (P.L. 105-89); 42 U.S.C. § 622; 42 U.S.C. § 671; 42 U.S.C. § 672; 42 U.S.C §1985(3); 42 U.S.C. § 1983.

## BASIS FOR JURISDICTION IS DIVERSITY OF CITIZENSHIP
## PLAINTIFFS

{10} Plaintiff, Adam May, is a citizen of the State of Massachusetts.

{11} Plaintiff, Heather May, is a citizen of the State of Massachusetts.

{12} Plaintiff, I.M., is a citizen of the State of Massachusetts.

{13} Plaintiff, B.M., is a citizen of the State of Massachusetts.

{14} Plaintiff, D.M., is a citizen of the State of Massachusetts.

## DEFENDANTS

{15} Defendant, Cynthia Dungey, is incorporated under the laws of the State of Ohio, and has its principal place of business in the State of Ohio.

{16} Defendant, David Dombrosky, is incorporated under the laws of the State of Ohio, and has its principal place of business in the State of Ohio.

{17} Defendant, Ashley Keller, is incorporated under the laws of the State of Ohio, and has its principal place of business in the State of Ohio.

{18} Defendant, Lynn Stacy, is incorporated under the laws of the State of Ohio, and has its principal place of business in the State of Ohio.

## THE AMOUNT IN CONTROVERSY; $180,565.00

{19} On January 15, 2015, Delaware County, Ohio, Department of Job and Family Services, ("DCDJFS"), were granted temporary custody/ legal responsibility of D.M., I.M. and B.M.. Subsequently, DCDJFS established the children eligible to receive Title IV- E foster care maintenance payments. The children resided in a foster home, in Ohio, from January 23, 2015- August 3rd, 2015, during this time DCDJFS provided the monthly cost of care for the children in the amount of $6226.35.

{20} On August 3, 2015, DCDJFS placed the children with maternal aunt and uncle, ("the Mays"), in Dudley, Massachusetts through an Interstate Compact on the Placement of Children, ("ICPC"). The Mays were given physical custody of the children, while DCDJFS maintained temporary custody/ legal responsibility. The day DCDJFS placed the children in Massachusetts was the very day they decided to no longer provide any support for the cost of care for the children. Although, the children's placement changed, from a certified foster home in Ohio to a certified foster home in Massachusetts, their legal status had not.

{21} Ohio Department of Job and family Services claim that relative foster parents are not entitled to the same foster care maintenance payments as unrelated foster parents. This claim counters the ruling made on January 27, 2017, by the United States Court of Appeals for the Sixth Circuit, *D.O., et al. v. Glisson*, No. 16-5461, (6th Cir. Jan. 27, 2017). The court's ruling primarily rests on provisions of the Civil Rights Act of 1871 (42 U.S.C. § 1983), the Adoption and Child Welfare Act of 1980 (also known as the Child Welfare Act, CWA or Title IV- E of the Social Security Act codified in 42 U.S.C. § 672). The Supreme Court cases that have collectively interpreted these two statutes to confer a private right to foster care maintenance payments that is enforceable by foster parents regardless of whether the foster parents are related or unrelated to the children. Additionally, the ICPC requires that, "[t]he sending agency shall continue to have financial responsibility for support and maintenance of the child during the period of the placement."

{22} The legislative materials, at no point, suggest that Congress intended to discriminate between potential beneficiaries, equally in need of the program, on the basis of their relationship to their foster parents. However, Ohio Department of Job and

Family Services do not operate according to the federal laws, in Ohio there is, "no relative foster care, there is only licensed foster care or unlicensed relative home." Ohio further explains that, "[f]oster parents in Ohio are strangers to the children in their care and are paid for their care of children in the system. However, relatives are not paid a stipend to care for their nieces, nephews, and grandchildren."

{23} If the children had remained living in a foster home in Ohio, DCDJFS would have continued to pay for the children's cost of care. However, DCDJFS has refused to provide the Mays any financial support due to the Mays' relation to the children. The ICPC remains open today establishing that DCDJFS maintains temporary custody/ legal responsible for the children and should be providing the Mays with a monthly foster care maintenance payment in the amount of $6,226.35. DCDJFS placed the children in Massachusetts twenty nine (29) months ago, had DCDJFS continued to provide for the cost of care for the children, of whom they are legally responsible for, DCDJFS would have disbursed an amount of $180, 565.00. However, the children and the Mays have been subjected to discrimination and have suffered because of it.

## FACTS
## STATEMENT OF CLAIM (No. 1)

{24} In January 2014, Oldham County, Kentucky, Children's Services received a report of abuse/ neglect against biological mother of D.M., I.M. and B.M, all residents of Oldham County, KY. The children were in Delaware County, Ohio, visiting the Mays and began describing several accounts of abuse and neglect by biological mother. Having received prior complaints, Kentucky Children's Services, ("the Cabinet"), immediately filed a Juvenile Dependency, Neglect and Abuse Petition in Oldham County, Kentucky, Family Court.[1] The Cabinet then contacted DCDJFS. The Cabinet requested DCDJFS complete an evaluation of the Mays' home, followed with monthly home visits and provide supervised visitation for any scheduled visits between the biological mother and the children.

{25} Judge Feely, of Oldham County, KY, Family Court adjudicated the children abused/ neglected on February 28, 2014, ordering that, "the children were to remain in

---

[1] Oldham Co., KY, Family Court, (Case Nos.: 14-J-00015-001, 14-J-00016-001, 14-J-00017-001).

the temporary custody of Adam and Heather May and jurisdiction over the children ceded to Ohio."

{26} On April 17, 2014, a Disposition Order was filed in Oldham County, KY, Family Court, which reports that, "the children are in need of protection" and that, "no party resides in Kentucky, parents moved to Illinois. Since the children are currently with temporary custodians in Ohio, this Court will cede its "Home State" Jurisdiction under UCCJEA to the proper court in the state of Ohio."

{27} Dated on April 16, 2014, DCDJFS explain that, "[i]t was agreed that an ICPC would be completed to formalize the process," adding that they are, "inclined to close the current Courtesy Supervision Case, effective 04/17/14, as the Department cannot provide services to parents who live in another state." This letter was signed and approved by Lynn Stacy, Supervisor at DCDJFS. Kentucky never "agreed" to an ICPC, which would request that the children be placed in the State of Ohio, an ICPC was not necessary since the children were *already* in Ohio, through an Emergency Placement. (Emphasis added.)

{28} According to the records, Kentucky made several attempts to transfer the case to Delaware County, Ohio, to ensure the children received on- going services, support and protection. DCDJFS' decision not to allow further case management rendered the children and the Mays defenseless. The Ohio Department of Job and Family Services' Comprehensive Assessment Planning Model outlines specific services for children placed out of their home for more than 30 days, including; a reunification assessment, case-planning, safety checks and reviews thereafter. In Ohio, once a child has been placed out of their home, adjudicated abused/ neglected/ dependant and is under court supervision, Children and Family Services do not simply close the case three (3) months later.

{29} DCDJFS claim they cannot provide services to parents who live in another state, which clarifies that in order to have an open child- protection case in Delaware County, Ohio, requires more than a recently adjudicated abused/ neglected sibling group of three (3) residing in the county. This explains that in order to have an open child- protection case in Delaware County, Ohio, requires that a biological parent be present.

{30} The choice not to accept the children's case transfer from Kentucky was irrational, unfounded and violated Plaintiffs' Constitutional right of Procedural Due Process, as well as their Constitutional right of Equal Protection. To deprive the Plaintiffs of these procedural safeguards will prove to be irreparable.

## STATEMENT OF CLAIM (No. 2)

{31} The Mays were summoned into court on October 10, 2014, six (6) months after DCDJFS refused to accept the children's case from Kentucky. The summons was a Complaint for Custody and/ or in the Alternative for the Termination of the Current Placement Order. The complaint was filed by biological mother in the Court of the Common Pleas, Delaware County, Ohio, Juvenile Division.[2] During that time, Mr. May had accepted a new position and his employer had begun the process of relocating the Mays to Boston, Massachusetts. They planned to move immediately after the sale of their home in Ohio however, the new child custody case in Delaware County, Ohio, posed a huge conflict whether the children were able to move out of state. The Mays hired attorney, Stephanie Dailey, who filed a motion to dismiss biological mother's complaint. The Mays contacted DCDJFS seeking their help, however no assistance was offered, no suggestions were made and the department declined to become involved, since, "there were no safety risks to the children."

{32} During an ordered mediation session the Mays explained the situation to the guardian *ad litem*, Randy Fuller, who suggested opening a dependency case. January 2, 2015, the Orders of Magistrate McCollister explain that, "[t]his matter came on for the Guardian ad Litem's Motion for Expedited Hearing on December 22, 2014, that was filed with the Court on January 15, 2015." The Magistrate continues, "the guardian ad litem advised the Court that the emergent matter is the *possibility* of the caregivers relinquishing custody of the minor children. Adam May has accepted a job offer in Boston, Massachusetts and is relocating on December 28, 2014." Furthermore, "Attorney Stephanie Dailey advised the Court that her clients cannot afford to pay for prolonged

---

[2] *Hofmann vs. May*, Delaware Co., OH, Juv. Div. (Case Nos.: 14071593AD, 14071594AD).

litigation. Heather May has agreed to stay at least through the holidays." (Emphasis added.)

{33} Mr. Fuller motioned the Court on January 14, 2015, which initiated a dependency case.[3] Within his motion he clarifies that, "[a]fter adjudication, the Kentucky Court and the equivalent of the Department of Job and Family Services created a case plan and gave custody of the minor children to Adam and Heather May (maternal aunt and uncle). It appears from the records the Kentucky Court tried to transfer the abuse and dependency case to Delaware County. However, the case was not properly transferred to this Court." Additionally, Mr. Fuller requests the Court to grant disposition of: "(1.) Delaware County Department of Job and Family Services be a party to this matter, (2.) temporary custody of the children to Heather and Adam May, (3.) Court- ordered protective supervision by Delaware County Department of Job and Family Services for the minor children, (4.) such other orders as the Court deems necessary as provided by law." The Court did not grant temporary custody of the children to the Mays, as requested by Mr. Fuller, the children were placed into the temporary custody/ legal responsibility of DCDJFS then placed into a foster home on January 23, 2015.

{34} The Mays' desire for the children to move to Massachusetts, and their strong disinclination of relinquishing custody, was well known to the Court and DCDJFS, yet absolutely no efforts were made to prevent the children's removal from their home and placement into foster care. This situation did not require an emergency removal, on the contrary, the children remained in the Mays' physical custody for an additional eight (8) days subsequent to the order granting DCDJFS temporary custody.

{35} Perhaps the decision not to make any reasonable efforts to prevent the children's removal and placement into foster care was on account of the children residing with legal guardians and not a biological parent. DCDJFS did explain that they cannot provide services to parents who live in another state.

---

[3] *In Re. D.M., I.M., B.M.*, Delaware Co., OH, Juv. Div. (Case Nos.: 15-01-0056-AB, 15-01-0057-AB, 15-01-0058-AB).

## STATEMENT OF CLAIM (No. 3)

{36} The Mays filed a motion requesting reunification, (*pro se*), on March 4, 2015, in Delaware County, Ohio, Court, Juvenile Division. They attended the pretrial on May 6, 2015, at which time they learned they needed to complete an ICPC. On June 2, 2015, Magistrate Schoenling ordered an expedited ICPC, "priority placement," and the custody trial was held on June 8, 2015, and July 2, 2015. At the conclusion of the trial, the Magistrate ordered the custody of children, "remain with Delaware County Department of Job and Family Services with placement of the minor children with Heather May and Adam May, with an approved ICPC."

{37} The Mays complied with each regulation and requirement surrounding the ICPC therefore, Massachusetts Department of Children and Families certified them as foster parents. On August 3, 2015, DCDJFS placed the children with the Mays in Dudley, Massachusetts, through an ICPC. After the children were placed with the Mays, DCDJFS maintained temporary/ legal responsibility of the children, while the Mays were solely had physical custody. Massachusetts Department of Children and Families monitored the children's placement through monthly home visits with the children, followed by reports sent to Ohio. Massachusetts Department of Children and Family Services also supervised the home with monthly safety checks and overseen the Mays' foster care license and background checks.

{38} Massachusetts ICPC Coordinator, Susan Richards, received the required paperwork regarding the children's financial information. Within the records the State of Ohio documented that the children were not Title IV- E eligible alongside a Financial Agreement between the Mays and DCDJFS. The Financial Agreement was signed on January 16, 2015, after DCDJFS obtained temporary custody of the children and they remained in the Mays' home. However, the same agreement was *resigned* on May 12, 2015, by DCDJFS' Supervisor Ashley Keller and was sent to Massachusetts as the children's financial information. Without the Mays' knowledge, Mrs. Keller resigned an agreement that the Mays signed four (4) months prior. (Emphasis added.)

{39} Prior to the children's placement, the Mays began seeking services and support that the children would be eligible to receive. The Mays contacted Ohio ICPC Coordinator, Heather Spencer and on July 8, 2015, (note; the date of placement in

Massachusetts is August 3, 2015), Ohio ICPC Coordinator emailed DCDJFS, while CC'ing the Mays. In the email, Mrs. Spencer notifies DCDJFS that, "[t]he sending agency shall continue to have financial responsibility for the support and maintenance of the child during the period of placement." Additionally, Mrs. Spencer informs DCDJFS that, "[t]he Mays actually are having a foster home study completed. Massachusetts ICPC informed me that all relatives must be licensed in their state, so it would technically be a foster placement initially." However, only three (3) months later, Mrs. Spencer responds to the Mays with completely conflicting information. On October 13, 2015, Mrs. Spencer explains to the Mays, "[y]ou are not currently a fully licensed IVE reimbursable foster home in the state of Massachusetts. You are a licensed relative home, but that is not the same as a regular foster home in that state and does not qualify for IV-E reimbursement. In Ohio, there is no relative foster care, there is only licensed foster care and unlicensed relative home."

{40} Due to the amount of inquiries made by the Mays, on October 23, 2015, the Mays were notified that, "State Staff are being asked to review the case." The Mays heard nothing regarding the review, apparently state staff found no error in DCDJFS violating federal laws.

{41} The Mays were given several different reasons as to why DCDJFS would not provide any financial support for the children. DCDJFS' attorney, Katheryn Munger states, "DCDJFS does provide for the children by offering the Medical Card, public school, and benefits through the Massachusetts public assistance system." Additionally, "the Department's obligation is being met by state services. Foster parents in Ohio are strangers to the children in their care and are paid for their care of children in the system. However, relatives are not paid a stipend to care for their nieces, nephews, and grandchildren, nor were the Mays ever promised a stipend when they volunteered." Mrs. Munger adds, "the Mays, having a greater family income than almost any relative placement we currently utilize in any other case, are not entitled to receive more."

{42} DCDJFS declares that, "Ohio does not owe the Mays more money," advising that it would be in, "the May's best interest to transfer this case to Massachusetts and the case workers can visit with them in their home and the Mays would have a local

agency to deal with." Please note; since the children's placement in Massachusetts, DCDJFS has not provided the Mays with *any* money. (Emphasis added.)

{43} On October 14, 2015, DCDJFS, "stands firm that the Mays are not entitled to additional benefits than those that they are already receiving - a government health care card for the children (MassHealth), the public assistance benefits they are eligible for in Massachusetts (TANF), and public school."

{44} On May 5, 2016, DCDJFS' Supervisor Ashley Keller explain to the Mays, *via* email, that they will not provide any financial support due to the Mays' relation to the children. Mrs. May explained that they are licensed foster parents, Mrs. Keller claims that that is irrelevant.

{45} The Mays have reached out to the Fifth Regional Office of the Administration for Children's and Families at 233 North Michigan Avenue, Suite 400, Chicago, Illinois. The Regional Administrators; Barbara Putyra, Angela Green and Kendall Darling, all claimed that DCDJFS were not doing anything illegal therefore, they could not intervene. On several occasions the Mays sought guidance from Delaware County, Ohio, Commissioners; Barb Lewis, Gary Merrell and Jeff Benton however, the Mays received the same answer.

{46} The Mays contacted the Administration for Children's and Families in Washington, D.C. and on April 4, 2017, the Mays received a letter from ACF, "[a]lthough the Children's Bureau is the Federal agency in charge of allocating funds to State agencies for the direct delivery of child welfare programs, the provision of kinship/ foster care payments falls under the purview of the States through their local departments. As the Federal Government does not have legal authority to intervene in individual child welfare matters, we can again direct you to State- level resources that may provide you with the clarification and assistance you are seeking. As your nieces and nephew remain in the State's custody, it may be possible to discuss this case and your related concerns with the State Foster Care Program Manager. This individual has oversight responsibility for all foster care services provided to children in the custody of the State and is the expert and authority on foster care policy in each State. You may contact: Karen McGormley, Ohio Department of Job and Family Services, Office of Families and Children." The Mays did indeed notify Karen McGormley, several times, and each time Mrs.

McGormley explains that she, nor the state, can intervene due to Ohio being a, "county-administered state."

{47} To no avail, the Mays have exhausted all administrative remedies available in the State of Ohio, (filing *pro se*), including: a grievance complaint, a state hearing, an administrative appeal, a judicial review and another administrative appeal. In May 2017, the Mays filed a complaint for a Writ of Mandamus, (again, *pro se*), in the Ohio Supreme Court, seeking receipt of foster care payments, which was ultimately dismissed. The defendant, Cynthia Dungey, is the Director of Ohio Department of Job and Family Services. The Mays identified Mrs. Dungey as the defendant through Ohio Revised Code declaring that, "the department of job and family services shall act as the single state agency to administer federal payments for foster care and adoption assistance made pursuant to Title IV- E."

{48} After countless efforts, the Mays never received a response back from Cynthia Dungey, so there was no direct communication between the Mays and Mrs. Dungey. Although, following the complaint filed in Ohio Supreme Court, Mrs. Dungey became aware of the Mays' claim that federal laws were being violated by DCDJFS. Although, having the knowledge and power, Mrs. Dungey failed to prevent continued deprivation of Plaintiffs' equal protection and privileges under the law.

{49} The most recent argument is that DCDJFS claim that the Mays are the children's, "permanent legal custodians and that a reunification with custodians is not reimbursable." In Kentucky, "[i]f a child has been removed from the home and placed in the custody of . . . the cabinet, a judge of the District Court shall conduct a permanency hearing," on an annual basis, Ky. Rev. Stat. Ann. § 610.125(1), (West 2016). At the permanency hearing, the judge must decide, among other things, whether the child should be placed for adoption, placed with a permanent custodian, returned to the parent, or kept in foster care. The Family Court Rules of Procedure and Practice provide that, "[a]ny order of permanent custody" must be on form AOC-DNA-9, Fam. Ct. R. P. Prac. 22(4). Pursuant to that form, the court must affirmatively place the child in permanent custody and discharge the Cabinet of further responsibility. Though the DCDJFS affirm that the Mays are the children's permanent guardians, it has not been identified that the family court held a permanency hearing. According to the records, Judge Feely documented the

children's custody to the Mays on a DNA- 5, it was not entered on the AOCDNA-9, Order- Permanent Custody form, as required by Rule 22.

{50} On May 23, 2016, DCDJFS filed a motion in the Delaware County, Ohio, Juvenile Court, to transfer the case to Massachusetts. Ironically, DCDJFS suggests to transfer the case to another state although, when Kentucky requested that Ohio accept the children's case, they refused.

{51} The Mays presented this financial issue to the presiding judge in Delaware County, Ohio, Juvenile Court through the filing of objections, *(pro se)*, to the children's semi- annual case reviews on January 15, 2016, and again on July 1, 2016. Their objections included a request to amend the children's case plan by adding financial support from DCDJFS. On July 14, 2017, Judge Hejmanowski denied their objections and request for financial support.

{52} In August 2017, upon reaching his eighteenth (18) birthday, D.M. "aged- out" of foster care. Prior to DCDJFS closing his case, D.M. requested for ongoing services and support, not only did DCDJFS deny his request, they closed his case without supplying him a transition plan, social security card, credit report or driver's license.

{53} On December 6, 2017, Judge Hejmanowski of Delaware County, Ohio, Juvenile Court filed a Judgment Entry, granting DCDJFS' Second Motion to Terminate the Case however, the judgment is on appeal in the Ohio Court of Appeals, Fifth Appellate District, which establishes that DCDJFS maintains temporary custody/ legal responsibility of the children. Nowhere in the judgment entry mentions financial responsibility rendering it not applicable to appeal.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs prays:

(a) That the Court declares that the actions of Defendants complained of herein are in violation of the Adoption and Safe Families Act, (P.L. 105- 89);

(b) That Defendants administer monthly Title IV- E foster care maintenance payments in the amount of $6,226.35, until the ICPC is discharged with the concurrence of the appropriate authority in the receiving state;

(c) That Defendants reimburse Plaintiffs for the children's cost of care, beginning August 3, 2015 to present time;

(d) That Defendants take affirmative action to ensure that the activities complained of above never again are engaged in by them or any of their agents;

(e) That Defendants, their agents, employees, and successors are permanently enjoined from discriminating on the basis of relation against any persons in violation of the Adoption and Safe Families Act;

(f) That Plaintiffs are awarded its costs of attorneys' fees;

(g) That appropriate compensatory and punitive damages are awarded to Plaintiffs that would punish Defendants for its intentional, malicious, willful, callous and reckless disregard for Plaintiffs' rights;

(h) That Plaintiffs are awarded such other and further relief as the Court deems just and proper.

## CERTIFICATION AND CLOSING

Under Federal Rule of Civil Procedure 11, I certify to the best of my knowledge, information and brief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argrument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or; if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

I agree to provide the Clerk's Office with any changes to my address where case- related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: 1/19/2018

Signature of Plaintiff:
*/s/ Adam May*
Adam May

## CERTIFICATION AND CLOSING

Under Federal Rule of Civil Procedure 11, I certify to the best of my knowledge, information and brief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argrument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or; if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

I agree to provide the Clerk's Office with any changes to my address where case- related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: 1-19-18

Signature of Plaintiff:
*/s/ Heather May*
Heather May